UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 11 70451 MAG (LB) |
| Plaintiff, | ) ) | |
| | ) | RELEASE ORDER |
| v. | ) ) | |
| SEAN WAYNE BECKETT, | ) ) | |
| Defendant. | ) ) | |

Following a wiretap resulting in intercepts, Sean Beckett was charged by complaint with being an ounce-level buyer of methamphetamine supplied by others dealing in pound quantities (by government proffer in other related cases, roughly a pound a week). Following a hearing on April 28, 2011, and for the reasons stated on the record and in this order, the court found that restrictive conditions would assure the defendant's appearance and the community's safety and ordered the defendant released on the conditions recommended by Pretrial Services. The conditions are set forth in the attached "Order Setting Conditions of Release and Bond Form," which is a standard one-page carbon-copy form that is used in the Northern District of California.

I. RELEVANT LEGAL STANDARDS

Under the Bail Reform Act, 18 U.S.C. § 3142, a court must order the release of a defendant

RELEASE ORDER
CR 11 70451 MAG (LB)

on a personal recognizance or unsecured appearance bond unless release on a bond alone will not reasonably assure the defendant's appearance or the safety of the community or another person. *See* 18 U.S.C. § 3142(b). If a court determines that release on a bond alone presents a risk of nonappearance or a danger to any person or the community, then the court must choose "the least restrictive further condition[s]" that will assure the defendant's appearance and the safety of the community or another person. *See id.* § 3142(c) (listing thirteen possible conditions of release and empowering the court to impose "any other condition that is reasonably necessary" to assure the defendant's appearance and the community's safety).

In evaluating whether conditions can be fashioned under section 3142(c) to reasonably assure the defendant's appearance and the safety of the community or another person, a court "shall consider" the factors in section 3142(g), including (1) the nature and circumstances of the offense, including whether the offense is one of certain enumerated crimes (including a controlled substance offense), (2) the weight of the evidence, (3) the history and characteristics of the person (including his job, financial resources, family ties, community ties, substance abuse history, physical and mental condition, character, criminal history, past conduct, track record in appearing court, and whether at the time of arrest the person was on supervision for parole, probation, or other release in a pending criminal case), and (4) the nature and seriousness of the danger to any person or the community posed by the person's release. *Id.* § 3142(g).

Under section 3142(f), the court holds an actual bail hearing only in certain cases, including on the government's motion in drug cases (like the one here) involving a maximum sentence of at least ten years. *See id.* § 3142(f). At the hearing, the court determines whether any conditions in section 3142(c) will reasonably assure the defendant's appearance and the safety of the community or another person. *See id.* § 3142(f). The court must order a defendant detained if – "after a hearing pursuant to the provisions of subsection [3142](f)" – the court finds that conditions cannot be fashioned to assure the defendant's appearance in court or the safety of the community or another person. *See id.* § 3142(e)(1). For a drug offense like this one with a maximum prison term of at least ten years,

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of

RELEASE ORDER
CR 11 70451 MAG (LB)                              2

conditions will reasonably assure the appearance of the person . . . and the safety of the community.

*Id.* § 3142(e)(3).  The presumption shifts a burden of production to a defendant, but the burden of persuasion remains with the government.  *See United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).   The government must establish the risk of non-appearance by a preponderance of the evidence, *see United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985), and it must establish danger to the community by clear and convincing evidence, *see* 18 U.S.C. § 3142(f)(2)(B).

## II.  RELEASE ORDER

Following a hearing under 18 U.S.C. § 3142(f), and considering the factors set forth in section 3142(g), the Court finds that a combination of conditions in section 3142(c) will reasonably assure the defendant's appearance in this case and the safety of any other person or the community.  In particular, the Court considered the following facts and 3142(g) factors.

A.  <u>The Nature and Circumstances Of the Offense</u>

The serious narcotics offenses here involve methamphetamine.  While Mr. Beckett's conduct as a buyer (and presumably re-seller) is less culpable than the supplier, still, it is a serious offense.  The court observes that other buyers generally have been released on the case on conditions (generally involving residential treatment because addiction has been a problem for those defendants charged in other complaints related to the same wiretap).

B.  <u>The Weight of the Evidence</u>

While the weight of the evidence is the least important factor, *see, e.g., United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991), it is relevant to the court's assessment of danger to the community and the risk of the defendant's non-appearance in court.  Given the substantial penalties faced by the defendant, the case – as revealed by the presumption and the strength of wiretap evidence with actual intercepted phone calls – tends to show flight risk and reveals the danger to the community of the defendant's conduct.

C.  <u>The Defendant's History and Characteristics</u>

The defendant, who is 35, has no criminal history, and was born in Martinez and lives in

RELEASE ORDER
CR 11 70451 MAG (LB)                                   3

Rodeo now with his mother and two sisters. He is employed ful-time as a security guard. The government agreed that on the record in the bail study, conditions could be fashioned to secure his release.

The important additional issues raised by the government were information about a Hells' Angels signed placard and information regarding Hells' Angels official phone numbers found in the home when searched. Also, really what boils down to a weapons trove was found in the attic. This raised serious concerns about danger to the community and was appropriately raised by the government and considered by the Court (as was the context of the entire wiretap). The weapons and ammunition were seized by the government.

What Mr. Tamburello offered is that Mr. Beckett moved in to care for his sick mother a year ago, the memorabilia dates from 2006, and the father (not Mr. Beckett) was the member of the Hells' Angels. Given that assurance (and the family members were all in court), the Court accepts that explanation (even as it recognizes the important issue raised by the government).

D. Conclusion and 3142(c) Conditions

Here, the defendant produced evidence to rebut the presumption that no conditions of release would reasonably assure his presence or community safety. Under *Hir*, the burden of persuasion remains with the government. *See* 517 F.3d at 1086. The court's inquiry is not whether the defendant is guilty of the offenses, which is why the weight of the evidence is the least important factor in the court's bail inquiry. *See Gebro*, 948 F.2d at 1121. Instead, even in the context of a section 3142(f) hearing, the court's inquiry remains whether – considering the factors in section 3142(g) – any conditions in section 3142(c) will reasonably assure Mr. Beckett's appearance and the safety of the community. The court finds that the conditions in the attached bond form reasonably assure the defendant's appearance and community safety.

The Court elaborates the co-signing condition here. Mr. Beckett's sister co-signed on the bond in the amount of $50,000. The government did not argue it here, but if it does on appeal, the explanation may help provide context. In other cases, the government argued that the court could not impose this condition without requiring the sureties to demonstrate by affidavit that they had sufficient assets to cover the bond amount. *See* 18 U.S.C. § 3142(c)(1)(B)(xii)

RELEASE ORDER
CR 11 70451 MAG (LB)                4

(permitting a defendant to be released on a bail bond with solvent sureties); Fed. R. Crim. P. 46(e) (requiring sureties to sign an affidavit that they have adequate assets). The court rejected that argument in other cases, and rejects it here. It did not appoint the co-signors as sureties because they do not have sufficient solvent assets now to make good on a bond amount now. Instead, based on their income and the Court's assessment of their ability to pay a bond amount over time, the Court imposed the condition that they co-sign on the bond. The Court imposed that condition under 3142(c)(1)(B)(xiv)'s catch-all position, which allows the Court to impose "any other condition that is reasonably necessary" to assure a defendant's appearance and community safety.

To explain this approach in more detail, it is true that a court *may* release a defendant on a bond co-signed by solvent sureties. But that is only one of many conditions that a court *may* impose. Indeed, before imposing any conditions of release, the bail statute first requires release on a personal recognizance bond or an unsecured appearance bond unless such release would not reasonably assure the person's appearance or the safety of the community. 18 U.S.C. § 3142((b). Then, the bail statute requires the following:

> If the judicial officer determines that the release . . . [on a personal recognizance or unsecured appearance bond] will not reasonably assure the appearance of the person as required or the safety of any other person or the community, such judicial order shall order the pretrial release of the person –
>
> (A) subject to the condition that a person not commit a Federal, state, or local crime during the period of release . . .; and
>
> (B) subject to the *least restrictive further condition, or combination of conditions,* that the judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person or the community, which may include the condition that the person —
>
> [then lists fourteen possible conditions of release that a court may impose].

*See* 18 U.S.C. § 3142(c)(1)(A) and (B)(i-xiv). The fourteen possible conditions are as follows:

> (i) a custodian; (ii) employment; (iii) attending school; (iv) travel restrictions; (v) no contact with victims; (vi) reporting to pretrial services; (vii) a curfew; (viii) no firearms; (ix) no excessive use of alcohol and no controlled substance without a prescription; (x) medical, psychological or psychiatric treatment (including substance abuse treatment); (xi) execution of an agreement to forfeit solvent assets upon a failure to appear; (xii) executing a bail bond with solvent sureties; (xiii) intermittent custody (with release for work, school, and other limited purposes; and (xiv) "any other condition that is reasonably necessary to assure the

RELEASE ORDER
CR 11 70451 MAG (LB)                5

appearance of the person as required and to assure the safety of any other person and the community."

Thus, 3142(c)(1)(B) requires the court to release a defendant under the least restrictive conditions that will reasonably assure the defendant's appearance and community safety, "which may include" the fourteen conditions listed above. That list is not exhaustive or exclusive. More to the point here, nothing in section 3142(c)(1)(B) *requires* the court to have a bond with solvent sureties.

The bail statute's approach is that when, as here, an unsecured bond alone is not sufficient, the Court may impose additional conditions that are "the least restrictive further conditions" that will reasonably assure the defendant's appearance and the safety of the community. Those conditions *may* include the conditions specified in section 3142(c)(1)(B)(i-xiii) (including a solvent surety) or "any other condition that is reasonably necessary to assure" the defendant's appearance or the community's safety. *See id.* § 3142(c)(1)(B)(xiv). The conditions that the Court imposes here include a $50,000 unsecured personal recognizance co-signed by the sister.

As part of the co-signing process, the Court did not require a Rule 46(e) affidavit establishing assets of up to $50,000 because the pretrial process revealed that they did not have those assets. Instead, the Court had the co-signer sign under section 3142(c)(1)(B)(iv)'s catch-all provision. The bail study identified the co-signor's income, employment history, and assets. The Court instructed the co-signor, and the defendant, about the consequences of signing on the bond: if the defendant violates any of the conditions of his release, the Court will declare the bond forfeit, and the government may come after the defendant and the co-signor for up to the full amount of the bond. The Court explained that the bond amount was like a mortgage in that the co-signer would be liable to pay up to $50,000 if the defendant violates any terms of his release. The Court emphasized to the co-signer the real and long-standing financial harm that the co-signers would suffer if the defendant violated the terms of his release. The Court also emphasized to the defendant how the co-signer was staking her financial future on Mr. Beckett's compliance with the terms of his release. It is the defendant's recognition of that risk – together with the other conditions of release – that reasonably assures the Court of the defendant's appearance and the

RELEASE ORDER
CR 11 70451 MAG (LB)                                         6

safety of the community.  *See* 18 U.S.C. § 3142(c).  The Court is confident – based on Mr. Beckett's evident distress and his sister's support in court – that the risks were fully understood and taken very seriously (particularly by Mr. Beckett).

Three other points about this process should be stressed.

First, the government's position – taken to its logical conclusion – is that defendants with some risk of non-appearance or danger to the community that can be mitigated with a co-signed appearance bond can never be released unless they can identify someone in their lives with significant and identifiable assets.  Put another way, under the government's approach, defendants without access to material wealth (either their own or through friends and family) will not have a meaningful shot at pretrial release.  That runs counter to the Bail Reform Act's mandate that a "judicial officer may not impose a financial condition that results in the pretrial detention of the person."  18 U.S.C. § 3142(c)(2).  The Advisory Committee Notes to Rule 46 reflect a similar policy to eliminate financial barriers to a poor defendant's ability to be released on bail:

> The amendments are designed to make possible (and to encourage) the release on bail of a greater percentage of indigent defendants than are now released.  To the extent that other considerations make it reasonably likely that the defendant will appear, it is both good practice and good economics to release him on bail even though he cannot arrange for cash or bonds even in small amounts.  In fact it has been suggested that it may be a denial of constitutional rights to hold indigent prisoners in custody for no other reason than their inability to raise money for a bond.  *Bandy v. United States*, 81 S. Ct. 198 (1960).

Advisory Committee Notes to 1966 Amendment to Fed. R. Crim. P. 46.

Second, the court observes that Rule 46(e) does require that a surety be qualified.  That means the surety must demonstrate by affidavit that its assets are adequate.  Fed. R. Crim. P. 46(e); *see also* 18 U.S.C. § 3142(c)(1)(B)(xii) (if solvent sureties execute a bond, they must provide the court with information about the value of the assets and liabilities; such surety shall have a net worth with sufficient unencumbered value to pay the amount of the bail bond).  The Court does not read Rule 46(e) to be inconsistent with the Bail Reform.  A reasonable reading is that Rule 46(e) applies to solvent sureties who execute a bail bond under 18 U.S.C. § 3142(c)(1)(B)(xii).  And again, this reading comports with the policy of eliminating barriers to the release of indigent defendants on bail.  *See* 18 U.S.C. § 3142(c)(2); Advisory Committee

RELEASE ORDER
CR 11 70451 MAG (LB)                                7

Notes to 1966 Amendment to Fed. R. Crim. P. 46.  It also is consistent with the requirement that the Court impose the least-restrictive conditions to reasonably assure the defendant's appearance and the community's safety.  *See id.* § 3142(c).

Third, the approach that the Court employs here is the well-established practice of this district's magistrate judges and many magistrate judges across the country.  *See, e.g., United States v. Thomas*, 615 F. Supp. 2d 1083, 1085-86 (N.D. Cal. Apr. 29, 2009) (rejecting government's Rule 46(e) argument, noting significance of co-signers' promises to pay a significant amount of money over time, and noting that other federal courts throughout the country routinely apply this approach); *United States v. Powell*, No. CR 10-00292 CW (DMR), ECF Nos. 18 (release order rejecting Rule 46(e) argument) and 41 (Judge Wilken affirmed release order); *United States v. Cruz*, No. CR. 09-01157 DLJ (LB), ECF Nos. 24 (release order rejecting Rule 46(e) argument) and 30 (Judge Jensen affirmed release order).

## V.  CONCLUSION

The Court orders the defendant released pursuant to the conditions in the attached "Order Setting Conditions of Release and Appearance Bond."

At the government's request, and to allow it to consider whether to appeal, the court stays its release order until April 29, 2011, at 5:00 p.m.

IT IS SO ORDERED.

DATED:  April 28, 2011

LAUREL BEELER
United States Magistrate Judge

RELEASE ORDER
CR 11 70451 MAG (LB)                 8